Good afternoon, and may it please the Court. Heather Hacker for the Appellants. I will be presenting for 15 minutes, and I would like to reserve 4 minutes for rebuttal. The District Court entered a permanent injunction preventing appellants from disclosing, or even possessing, over 500 hours of undercover footage filmed during NAF's 2014 and 2015 trade shows. As Justice Black wrote in the Pentagon Papers case when the Supreme Court rejected a similar injunction, every moment's continuance of this injunction amounts to an indefensible violation of the First Amendment. And that was in a case where the government argued that the enjoined material was illegally obtained and even implicated national security. The injunction here is unconstitutional, violates federal copyright law, and is overbroad at minimum. The District Court also held appellants in contempt for allegedly violating the similar preliminary injunction, and that was also erroneous, as explained in the briefs. I'd like to spend the majority of my time today on the injunction. Now, while NAF may disagree with what the footage proves and may dislike Daleiden's methods, that cannot control the outcome of this case. Though NAF insists there's no public interest in the footage, that's objectively untrue. Daleiden's investigation directly led to the prosecution of NAF members, multiple investigations by Congress in several states, and findings of wrongdoing, and the exclusion of NAF members from the Medicaid program. The strong public interest in the footage counsels against enforcement of any contract to the contrary and against the issuance of the permanent injunction. Now, to be clear, the appellants do dispute that the one-page exhibit agreements were breached, but even assuming breach, the permanent injunction was an abuse of discretion and should be vacated in whole, or at the very least, narrowed significantly. And there are several reasons for this. First, as mentioned, the injunction conflicts with the First Amendment under long-standing Supreme Court precedent, and the appellants did not waive their First Amendment rights by signing the agreements. Well, you cited the Pentagon Papers case, but that's not really equivalent to the allegations and the evidence here. Is there a case you can point to that's a little closer to these facts? So, if Your Honor is referring to the fact that the Pentagon Papers case doesn't involve an allegation of wrongdoing or a state law breach, there are two other examples from the Supreme Court, the SNEP case and the CBS v. Davis case. And in the SNEP case, which I think is very analogous here, the defendant was a CIA agent who, as a condition of his employment, signed an agreement with the agency promising that he would not divulge any classified information and also promising that he would not publish any information that he learned while he was an agent without seeking pre-publication review from the CIA. Now, he went ahead and published a book without seeking pre-publication review. And in that case, the Supreme Court did not sanction a publication injunction. Rather, it simply said that there should be a constructive trust over any profits that he obtained as a result of the publication of his book. The CBS v. Davis case, there were allegations of state law violations by the news station. And yet, Justice Blackmun said that in a case like this, the usual remedy would be damages, not an injunction suppressing speech. And that's even in cases where, as there, the defendant was accused of breaching state law obligations. Now, another analogous context is in the defamation or libel area. The usual rule is that equity will not enjoin a libel. And so in those types of cases, and several circuits have held that, First Circuit, Second Circuit, the D.C. Circuit, that in those cases, the remedy is damages, not injunctive relief against future libel or future defamation. So under all of this precedent, it's clear that the injunction here cannot stand because it is enjoining further speech. And in order to satisfy the prior restraint requirements, which applies to injunctions like this, an injunction has to be justified by the most compelling of interests and drawn with surgical precision. And the injunction here meets neither of those criteria. It's also extremely overbroad. It includes over 500 hours of footage, huge portions of which are not even arguably confidential. And again, as the Pentagon Papers case said, that gagging of publication in general is only acceptable in very exceptional cases. And, you know, again, that was rejected by the Supreme Court in cases such as the Pentagon Papers case and such as the SNEP case, where the information at issue could implicate national security. But going to this specific issue here, which a lot of those are broad propositions that don't track really onto the facts here, and we have this specific waiver that he was asked to sign. And he basically, the district made a determination that he had intimate familiarity with nondisclosure agreements. So how does that factor in here? Yes, Your Honor. So there were two agreements signed, a confidentiality agreement and an exhibit space agreement. And there's a very high burden in general to show waiver of constitutional rights. The Supreme Court in Janus said that it has to be freely given and shown by clear and compelling evidence  And cases in this circuit that were decided before Janus looked for a knowing and intelligent waiver, which this court has held to satisfy where the defendant was advised by counsel during the contract negotiation. Specifically, I'm thinking of the Leonard case or the Davies case. But here we have, we know that the Janus standard of the clear and compelling is the prevailing standard. Is that right? Yes, Your Honor. That's correct. So if you have that as the correct standard, and then the district court makes findings as to compliance with that standard, where did the district court go wrong? So I would say the district court went wrong in a couple of ways. First, this is not analogous to a situation where there is an affirmative waiver, because there's nothing in these agreements that states that I understand that I'm affirmatively waiving my constitutional rights. Now, I'd like to just kind of put a footnote in here. We're talking, I think, generally about the First Amendment, but I would just want to flag for the court that I don't think there's anything in these agreements that indicates that Mr. Dalyden waived his Sixth Amendment rights. But going back to the First Amendment... So let's just stick, let's leave the Sixth Amendment over here for now. And you're saying why you don't think there was clear and compelling evidence, given the finding of the district court, the fact that he was familiar with these kinds of agreements. And district court said he knew what he was signing when he signed it, and his testimony to the contrary was not reasonable. So two things, Your Honor. First, in the cases that this court has held that there is waiver, again, it was in cases where there was not a contract of adhesion. It was in cases where there was actual negotiation over the terms of the contract, and the parties were represented by counsel, which was not the case here. And in the Davies case, where the court did... He didn't want to sign it. He could have left, right? Well, I guess there's a different context between the two agreements, right? The first agreement, he signed in advance in exchange for the payment in order to be able to attend the conference. The second agreement was signed after he had already paid to attend and was about to walk in the door. He was already entitled to go in. He was asked to sign that second agreement. So I think there's a significant issue as to whether that second agreement was even enforceable because it wasn't supported by additional consideration. But I just want to point out that in the Davies case, the court held that even though there was waiver in that circumstance, the parties were negotiating, they were represented by counsel, the court still declined to enforce that waiver because it was contrary to public policy. And so at minimum, I think that that's the case here. You have this huge amount of footage that is clearly of value to the public, and it's being embargoed by the district court and has been since 2015 because of a one-page exhibit agreement. It's just not proportional. And there's no attention being paid to exactly what is being enjoined and whether the injunction could be less broad. The footage involves images that were shot in public places. The Superior Court in the criminal case dismissed some of the charges because it said that there was no expectation of privacy in some of those recordings. And at minimum, the injunction should not apply to footage that involves Planned Parenthood, which is actually most of the footage, because if Planned Parenthood is permitted to enforce the NAF agreements as a third party, which it argued that it should be able to in their case, they already chose their remedy. They already proceeded there. They did not ask for a publication injunction there. And so the fact that NAF is now trying to relitigate those issues that affect Planned Parenthood here,  That should be precluded. So at minimum, the injunction should be significantly narrowed. Now I want to jump to the Sixth Amendment. Importantly here, the permanent injunction affects how Dalyden can defend himself in his criminal case. The charges there relate to the recording, but he can't publicly show or discuss the contents of that footage in order to defend himself in the courtroom of public opinion. And there's authority that suggests that a criminal defendant needs to be able to counter negative publicity about himself in order to ensure a fair and impartial jury pool. Dalyden is being prevented from doing that. And it's also chilling his defense attorneys, because they were actually held in contempt for violating the preliminary injunction before by filing a document in the criminal case that had a link to the footage at issue. And even though the district court claimed that its injunction doesn't have anything to do with the criminal proceedings, in fact, by holding them in contempt, it shows that that's not exactly true, because he's essentially asking Dalyden to go and get permission from him before he uses the footage in a certain way. And if it were only up to the superior court, the superior court would have dealt with the issue as to whether the filing should have been under seal or not, not the district court. So those are two major flaws with the injunction. I see that I have about two minutes and 45 seconds left, and I'd like to reserve the remainder of my time for rebuttal. Very well. May I proceed? May it please the court. Matthew Geragus for the appellants who are third-party criminal attorneys for defendant delighted in the civil case from district court. Some of my arguments were just somewhat usurped, but what I'd like the court to focus on is there is currently, so that we're clear, there currently is a criminal case still proceeding, motions at the end of the month, and a trial setting. This, which brings in the important implication that the Younger abstention doctrine needs to be applied, and the elements established in Younger have been met by, or there is the lack of facts from the district court that they shouldn't have abstained. One of the issues. The district court didn't enjoin the criminal proceedings, right? Well, it's not enjoining the proceedings. Under Younger, it's interfering with the proceedings. It was an interference. Judge Oreck said, I'm happy to abide by the decisions concerning evidence in the state court proceedings. Then why didn't he, but the state court did impose some restrictions, but that's the point. NAF sent a letter, their counsel sent a letter over to the state AG talking about the fact that sensitive material. Nowhere in that letter, which is in the record, did they mention that the injunction applies to anybody there. It just said, suggested to them, be cognizant of the fact that it's sensitive material. There is no place in the record where my clients, the two criminal defense attorneys, were given notice that they were covered by that. Under Younger, they would have the belief, the good faith belief, that they have to be dictated to, I'll say, by the state court, superior court judge. Nowhere were they put on notice. Then as we laid out, it was a criminal sanction initially. At the last minute, there was the throwaway, oh, here's the questions. I'm not having it as criminal. It's going to be a civil contempt, which happened, I think, contemporaneous with the hearing. I think it came out just before the hearing. Then requiring, as we've laid out in a cut and paste from the transcript, there was a series of questions where the district court was trying to invoke or trying to get my clients, state criminal defense attorneys, to acknowledge or testify to matters that would be attorney-client privilege or attorney-work product. Every step of the way, the criminal defense attorneys were thwarted in attempting to give the fullest defense they could to their client in the criminal case without interference from the federal court. And so with it open still, we could end this hearing, and leading up to the motions that are going to be heard and the trial, now that the defendant, now that NAF has a huge sanction award and knows they can go run over to the district court, if they don't like what they see over in the state court, hey, they just go run over to federal court and let's try it again. Let's try and usurp or try to interfere with the criminal defendant's right to a fair trial. And I see there's one minute left, and I'll reserve that for myself or for Ms. Hacker if she needs it. Very well. May it please the Court. Adam Sorensen on behalf of NAF in 21-15, number 93, the permanent injunction appeal. I'd like to begin by addressing defendants' First Amendment challenge to the permanent injunction. The district court did not use its discretion in concluding that defendants voluntarily and knowingly waived their First Amendment rights by entering into the confidentiality agreements as a condition of entering NAF's annual conferences, nor did the district court use its discretion in enforcing that waiver through a narrow injunction, which really does nothing more than simply hold defendants to their contractual promises, not to disclose illegally obtained materials to third parties. I think that this court already affirmed key legal aspects of these determinations at the preliminary injunction stage, and defendants have not pointed to any new arguments or any new evidence, which calls into question those sound conclusions. Just to go through some of the authorities that my colleague points to, as Judge Clifton pointed out, cases like the Pentagon Papers case are wholly inapplicable here for the simple reason that they did not involve a contractual waiver of First Amendment rights. And as far as the SNAP case that Ms. Hacker discussed, I think she may be missing a critical part of that case. This is the case involving the CIA employee who signed an employment contract with the government, stating that he would submit for pre-publication review any materials that he learned in the course of his employment. And it is true that the Supreme Court held that a constructive trust was the appropriate remedy after he had published material, but the Supreme Court also affirmed the issuance of an injunction, specifically requiring Mr. SNAP to submit further materials for publication to the government before publishing them. So that case in and of itself is an example of a person who waives First Amendment rights through a contract will be held to that contractual obligation, even when there may be First Amendment principles in play. The Council makes a point with respect to Mr. Daleiden that there were really these two different contracts at two different times. So by the time he shows up, he's already paid his money to get in. And then they show him another piece of paper, which he doesn't really have a choice to sign or not sign. So the question is whether the clear and convincing standard has been met here. Could you address that with respect to both agreements? Certainly, Your Honor. I think the clear and convincing standard would be met by the exhibition contract alone, which is the contract that Mr. Daleiden signed before even showing up to the venue. That is the contract that makes clear in paragraphs 15, 17, and 18 that an attendee cannot disclose to any third party any information that they learn in the course of attending the conference. But I would also dispute Ms. Hacker's characterization of the confidentiality agreement, which included the prohibition on recording information specifically through electronic means that was presented to Mr. Daleiden upon arrival at the venue. It was made clear to attendees that they had to sign that contract before they would be allowed into the venue space. And Mr. Daleiden, it is undisputed in the record that he did sign that contract as a condition of entrance in 2014. His compatriots also signed that contract before entering the venue in 2015. Mr. Daleiden did not, but only because when he was asked whether he had signed it, he lied and said that he had signed that contract. So I think that the clear and convincing evidence standard is amply supported by both contracts. And even if you were to only rely on the exhibition contract, it is fully satisfied. Just to turn briefly to the waiver cases that Ms. Hacker did address, I think that the Janus case and subsequent cases are instructive, in that the Janus case involved a situation where the waiver of First Amendment rights was not held to be effectuated by the mere fact of employment at a union workplace. So this was the case where the Supreme Court said it was compelled speech to require non-union members to pay dues simply because they worked in that space. I think the much more comparable factual scenario would be if you had employees who voluntarily and willfully joined a union, signed contracts saying they would pay fees, and then tried to challenge on First Amendment grounds the enforcement of such a contract. And that is exactly the circumstances that this court was faced with in Belgao v. Inslee, decided after Janus, and this court said, look, the First Amendment is not a license to break state law obligations. It is not a license to disregard contractual promises, and it is fully consistent with First Amendment principles to enforce those contracts in such circumstances. I also think an important difference between this case and some of the others that Ms. Hacker relies on, is the balance of interests. You know, on the one hand, you had the defendant's limited interest in information that they lied and stole, lied to obtain and stole, and you have a very limited public interest in that same information, as this court recognized last time. The district court went through these recordings very carefully and determined, as a matter of fact, that they showed no wrongdoing on the part of NAF or its members. And the various investigations that defendants refer to, the district court specifically looked into this, and you'll see at 1ER19 and 1ER20 that it found, as fact, that these particular recordings at the NAF conferences did not lead to any of the investigations that defendants are talking about. On the other side of these interests, I think it cannot be disregarded that the district court also found, as fact, that very serious harms would result to NAF and its members should these materials be disclosed. And I would point out that this is not merely hypothetical or a speculation. When defendants released their first video in 2015, and again when they violated the preliminary injunction in 2017, NAF saw an unprecedented spike in threats, violence, and harassment against its members. And some of these threats even specifically mentioned defendants' videos as the reason they were making their threats. So I think that the evidence on this record is very clear. There are compelling interests on the other side that warrant injunctive relief. If the court has no further questions on the First Amendment, I'd like to just briefly address the Sixth Amendment. To be frank, there simply is no Sixth Amendment right to wage a publicity campaign with illegally obtained materials. Defendants in their briefs cite no Sixth Amendment authority at all, let alone a case establishing that sort of principle. And I think it is also important to recognize, as Your Honor suggested in your questioning, that this injunction is very solicitous of the criminal proceedings in the Superior Court of California. It expressly provides the back court is free to make any orders it wishes, as far as the use of the enjoined materials in those proceedings. And also Judge Orrick made clear to defendants repeatedly throughout these proceedings that they were always welcome to approach him on an expedited basis and ask for permission to use these materials in particular ways. So I think, you know, one last overarching point on sort of the injunction as a whole is that it is very narrow. It only covers the particular materials that defendants expressly promised not to disclose. It does not prevent defendants from opining on matters of abortion, on opining about NAF and its practices. It does not even cover any other meetings, as NAF had originally requested. It simply restricts disclosure of the exact materials that defendants promised not to disclose. I'd also, finally with my last few minutes, I just want to address the claim preclusion issue that Ms. Hacker alluded to. This whole idea that NAF could not assert its contract rights in the suit because of the PPA affection is foreclosed for a number of different reasons. First and most fundamentally, NAF is not PPFA. They are not the same party. They are not in privity for purposes of claim preclusion, as would be required. And I think it's also important to realize that claim preclusion is an affirmative defense that would have had to be asserted properly in the district court, and it was not. So there are some cases suggesting that in some narrow circumstances, associations may bind their members in a claim preclusion situation, but defendants have pointed to no authority suggesting that an individual member binds an association and all the other members of that association by litigating a matter like this. So I think the claim preclusion issue is easily disposed of, and it's really the only argument here the defendants have made as to summary judgment and issue preclusion, which is the basis for summary judgment on the breach of contract claim. If the court has no further questions, I would yield the rest of my time and ask that the court affirm. Thank you. May it please the court, Lina Hughes of Morrison and Forrester. On behalf of Apelli National Abortion Federation, I will be addressing Appeal Number 21-15955. That is the appeal brought by Mr. Cooley and Mr. Ferreira, challenging the sanctions and contempt orders entered against them. Mr. Garagos has raised a number of arguments before this court, attempting to defend his client's conduct here, but I do want to briefly step back and talk about why they were held in contempt in the first place. There was a preliminary injunction here that had already been affirmed by this court, prohibiting their client, Mr. Dalyden, from disclosing videos that he surreptitiously took at NAF conferences and the names of NAF conference attendees. And the appellants knew exactly that. In fact, they complained about the preliminary injunction on their website, and then they disclosed precisely those materials, both on their firm's website and in publicly accessible court filings. And that disclosure caused tremendous harm to NAF and its members. Threats against them immediately skyrocketed. There were threats made to the lives of NAF members. Their families were endangered and they were targeted at their homes. NAF had to spend substantial resources to protect their staff and their members and to track down these videos and get them taken down. So the district court acted well within its discretion in concluding that appellants should be held in contempt in order to compensate NAF for the harm caused. Now, Mr. Garagos here today has led with his younger argument, but younger abstention just has nothing to do with this case at all. First of all, younger abstention only applies when the federal court action will actually or functionally enjoin the state court proceeding. But you heard Mr. Garagos. The state criminal prosecution of Mr. Dalyden is continuing. There is no functional or actual injunction of that proceeding. What we have here is a contempt order that simply orders appellants to compensate NAF and an underlying preliminary injunction that prohibits Mr. Dalyden and his agents from disclosing materials that he contracted not to disclose. So in other words, no state actor is actually or effectively enjoined from doing anything at all. And second, the younger abstention doctrine also doesn't apply here for another reason, which is that when there are already substantial federal proceedings underway before the state court action begins, younger abstention is inappropriate. And it's acknowledged here that the district court had already entered its preliminary injunction before the state prosecution even began. Third, and finally, younger also doesn't apply because NAF is not a party in the state criminal prosecution of Mr. Dalyden, nor is it otherwise represented there. It has no opportunity to raise its contract rights. That's yet another sign that younger abstention has no place in this case. Mr. Garagos also alluded to a lack of notice on the part of his clients, both to the injunction and to the type of contempt proceedings that were occurring here. Neither of those arguments is correct. First, they clearly had notice of the injunction. As mentioned, they complained about it on their website. They also attached it to the demurrer that they filed in the Superior Court. And that injunction unambiguously prohibited their client, Mr. Dalyden, from disclosing the materials that he took at the NAF conferences. The appellants seemed to be arguing that they needed to be told that they could not do on their client's behalf what their client was prohibited from doing himself. And that is not correct. They have no support for that. It is a background principle of law enshrined in Federal Rule of Civil Procedure 65 that court orders bind not only the parties, but also the parties' agents, attorneys, and those acting in concert with them, so long as they have notice of the injunction. Those requirements were clearly met here, and so the appellants were properly bound by the injunction. They also clearly had notice of the contempt proceedings against them. They argue now that they somehow thought these were criminal contempt sanctions and found out at the last minute that they were civil contempt sanctions. That couldn't be further from the truth. The district court never suggested that these were criminal contempt proceedings. The district court notified the appellants of the conduct underlying the contempt allegations, and NAF's response specifically called these civil contempt proceedings, and it sought civil compensatory sanctions that were ultimately awarded here. And the appellants then had ample time to submit written responses. They got multiple extensions of that deadline, and then they had over a month to prepare for a hearing. And before the hearing, if it weren't already clear enough, the district court enters an order that says expressly, I am only considering civil contempt sanctions. And even then, the appellants didn't come in and say, that's the first we're hearing of this, we thought this was criminal the entire time. They didn't say, excuse me, can we now present declarations? They didn't choose to testify at the hearing. Instead, they chose to invoke their attorney-client privilege and the work product protection. So it's clear here that they were not misled into choosing, into not providing evidence to the court. They chose not to offer evidence to the court. And therefore, they had all of the notice and opportunity to be heard that they were entitled to. And unless there are any questions from the court on this, we will rely on the briefs for the remainder of our arguments and ask that this court affirm. Thank you, Counsel. May I use my one minute? A few quick points. I'd like to start by clarifying something with respect to the district court not enjoining proceedings. In the Atlantic Coastline case, the Supreme Court said that if the court is enjoining parties, that has the same effect as enjoining proceedings. Another point I'd like to point out is that the Superior Court believes that it needs to comply with the injunction because in the order that it issued after the permanent injunction was issued here, he states at the beginning the fact that in order to adhere to the federal injunction, which prohibits Mr. Dalyden from even possessing the footage that's at heart of the criminal charges against him, he orders this Byzantine file-sharing system in order so that Dr. Dalyden can even prepare his defense. But I want to move to addressing some points made by Mr. Sorensen with respect to what the agreement says. And I think both Mr. Sorensen and Ms. Hughes said it a couple times, that there was an agreement not to disclose any of this information. And I don't believe that's accurate based on the terms of the contract itself. So I'm looking at the exhibit agreement, and that's in the fourth volume of the excerpts at page 673. And there are two points here. First, the agreement actually defines confidential information, not as all information that you receive at the conference, but instead information that NAF may furnish. Now, the content of these recordings, without getting into too much detail, is by and large not information furnished by NAF. These are casual business conversations that were held between individuals attending the conference, not in any capacity information given by NAF. So that does not embargo all information learned at the conference. Secondly, and I think this goes to the question of whether there was a clear and convincing evidence of waiver, in paragraph 13 of the exhibit agreement, the agreement contemplates the fact that photography and images would be taken at the conference, because it says photography of exhibits is allowed by NAF and the assigned exhibitor of the space. So that kind of contradicts the idea that there was supposed to be no recording or photography going on at this conference. In the record, in the second volume of the excerpts at page 101, or page 100 to 101, NAF admitted that it knew, in fact, that attendees at the conference would use their phone, and did, in fact, use their phones to take pictures and record during the conference. So it's not clear that this was some top secret conference that everyone knew they weren't supposed to take pictures at or record. I also want to clarify, as well, that the district court did not hold that the confidentiality provisions of the contract were breached. I believe that the holding was because of the way that the court applied issue preclusion. The breaches that were found in the Planned Parenthood case, which were limited to misrepresentation and the recording provision of the confidentiality agreement, which, again, as we discussed earlier, the confidentiality agreement given to him was not incorporated into the exhibit agreement, which was signed during the exchange of consideration, and so the confidentiality agreement is not enforceable. So unless there's any further questions, I would yield the rest of my time to Mr. Garagos, and we would ask the court to reverse and vacate the injunction. Mr. Garagos? Yes, very quickly. Ms. Hughes seems to confuse what the role of a criminal defense attorney is. She described it as the defendant's, or my client's, conduct. Their conduct is supposed to be one of a zealous defender of their client in the criminal case. She does mention that she believes that the Younger Doctrine doesn't apply, but as we pointed out in the Hicks-Miranda case, you can have a criminal case come later. The notion there's no controlling or interference by the circuit court against the state criminal court is just not even applicable. The fact that you've got over a $200,000 sanction award hanging over the head of criminal defendants, and the victim in the state criminal case can go at any time to a civil judge to see if they can rein in the type of matters that the criminal defendant needs to do in order to protect themselves in the criminal case is just a specious argument. As to NAF not take that back, notice of the injunction, nowhere in the record is there any indication that my clients were given that notice of the injunction prior to the imposition of the OSC. In fact, obviously, if the criminal case wasn't filed, they were never contemplated as one of the attorneys. Again, as I said, NAF's attorneys did send a letter to the state AG. They didn't give, as part of the record, an injunction, because we know at that point, they obviously knew that that injunction wasn't going to apply because that's a state court matter. Later, they woke up to it or figured, hey, we could use this as our angle to rein in the criminal case. With that, I yield the floor. Thank you. Thank you all for your arguments this morning, very helpful to the court. The case just argued will be submitted for decision and will be in recess for the morning. All rise.
judges: THOMAS, McKEOWN, CLIFTON